**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| ADEM ARSLANI,<br><br>Plaintiff,<br><br>v.<br><br>MICROSOFT CORPORATION, NUANCE COMMUNICATIONS, INC., and DELIVERHEALTH SOLUTIONS, LLC,<br><br>Defendants. | Case No. 3:26-cv-50106<br><br>Honorable Iain D. Johnston |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adem Arslani, proceeding *pro se*, alleges that Defendants Microsoft Corporation, Nuance Communications, Inc., and DeliverHealth Solutions, LLC misappropriated his consulting methodologies for healthcare clinical-documentation technology. He seeks relief under the Defend Trade Secrets Act ("DTSA"), the Illinois Trade Secrets Act ("ITSA"), and other related state law claims. Defendants now move for dismissal under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, those motions [19, 20] are granted. But Arslani will be given leave to file an amended complaint consistent with this order. Thereafter, the action will proceed on limited discovery related solely to factual development on the statute of limitations defense.

## I. Background[1]

Over a period of more than two decades beginning around 1996, Adem Arslani developed a series of proprietary consulting methodologies for healthcare clinical-documentation technology, including a "Health Check" diagnostic optimization methodology and a "Rapid Improvement Engagement" framework. Dkt. 1 at ¶¶ 2, 11, 191–93.

In 2018, Arslani began working for Dr. Reid Conant, who recruited him to work at Clinical AI Solutions, Inc. (CAIS). *Id.* at ¶ 5. Neither Dr. Conant nor CAIS are named as defendants in this action. While Arslani was employed by CAIS, Dr. Conant served as Chief Executive Officer of CAIS and simultaneously held a senior leadership role with Defendant Nuance Communications, Inc. (Nuance). *Id.* at ¶ 44. Through CAIS's consulting engagements, Arslani shared his methodologies with Dr. Conant, who then arranged meetings with Nuance executives Michael Clark and Brad Morrison. During those meetings, Dr. Conant presented Arslani's methodologies to Clark and Morrison. *Id.* at ¶¶ 112–14. After Nuance internalized Arslani's methodologies, CAIS was wound down, Arslani's employment with CAIS ended, and Nuance launched products and services that closely resembled Arslani's methodologies. *Id.* at ¶ 6.

[1] These allegations are taken from the Complaint [1] and related documents properly before the Court. The Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

On March 1, 2021, Nuance sold its Health Information Management (HIM) and Electronic Health Record (EHR) Go-Live Services division to Defendant DeliverHealth Solutions, LLC. *Id*. at ¶ 140. This division had incorporated service lines built on Arslani's methodologies, and the transaction thus transferred those methodologies to DeliverHealth. *Id*. at ¶ 142.

In late August 2021, during the final days of CAIS's operations, Arslani directly confronted Dr. Conant regarding Nuance and DeliverHealth's alleged misappropriation and ongoing use of his methodologies. *Id*. at ¶ 166. Dr. Conant did not deny the accusation and instead told Arslani that Nuance and Morrison had "screwed us over" and that he "couldn't look Brad Morrison in the eye," but asserted that there was "nothing illegal about it." *Id*.

Arslani's employment with CAIS was terminated on or about September 3, 2021. *Id*. at ¶ 26. That same week, Nuance launched "Dragon Medical One Essentials"—a product that replicated Arslani's Health Check methodology. *Id*. at ¶ 150. On September 8, 2021, Arslani sent a letter to Nuance's Executive Vice President and Chief Legal Officer Wendy Cassity detailing "the potential misappropriation of Plaintiff's methodologies, including the Health Check and RIE frameworks, which had been shared with Nuance executives Michael Clark and Brad Morrison." *Id*. at ¶ 51. Arslani quotes from this letter in his response brief[2]: "The fact that Reid served as a Nuance CMIO and CAIS CEO fostered an

[2] The Court may consider additional facts contained in Arslani's response brief that are consistent with the allegations in the Complaint. *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997).

environment that did not protect the intellectual property of CAIS, instead made it very easy for Nuance to take and offer the Health Check program, in a new form, copying the concept." Dkt. 31-1 at 8. Nuance acknowledged receipt of this letter, but never substantively responded. Dkt. 1 at ¶ 52.

In November 2021, Dr. Conant withheld a substantial portion of Arslani's compensation and conditioned payment on execution of a liability release agreement. *Id*. at ¶ 53. Although the parties to the release agreement were Arslani and CAIS, it "prohibited Plaintiff from contacting 'Nuance Communications or Microsoft in any way related to his employment and separation with CAIS,' including 'reporting information to Nuance Communications about any conduct on the part of Dr. Conant.'" Dkt. 31-1 at 9. Arslani signed the release in November 2021. Dkt. 1 at ¶ 53.

In March 2022, Defendant Microsoft Corporation acquired Nuance and its healthcare AI and Dragon Medical businesses. *Id*. at ¶ 7. Since the acquisition, Microsoft has continued to operate and benefit from products and services that used Arslani's methodologies. *Id*.

On September 30, 2025, Arslani filed an action against these Defendants in the Seventeenth Judicial Circuit Court, asserting claims arising from these same events. *Id*. at ¶ 60. Arslani voluntarily dismissed that action without prejudice on November 6, 2025. Dkt. 31-1 at 15. He then filed this action on March 17, 2026, which Defendants now move to dismiss.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper when "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Id.* at 558. Although the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

Generally, the Court's consideration is limited to the pleadings, any attached documents which are central to the complaint and referred to within it, and facts subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). But the Court may also consider facts that a plaintiff adds in his response brief, if those facts are consistent with his pleaded claims. *Knox v. Curtis*, 771 F. App'x 656, 658 n.2 (7th Cir. 2019).[3] *Pro se* complaints are interpreted liberally. *Sause v. Bauer*, 585 U.S. 957, 960 (2018).

[3] The Seventh Circuit appears to have attempted to harmonize competing lines of cases in *Smith v. Dart*, 803 F.3d 304, 310-11 (7h Cir. 2015) by stating that *allegations* can be added in a response brief but *claims* can't be added. *Wisconsin Tech. Sales, Inc. v. Tech. Inc.*, 21-cv-505, 2022 U.S. Dist. LEXIS 89244, at *9–10 (W.D. Wis. May 18, 2022). But the fact that

## III. Analysis

Of the six counts Arslani brings, only one provides the basis for federal jurisdiction: his Count I claims under the DTSA, 18 U.S.C. § 1836.[4] The Court addresses those claims first.

### a. Count I: DTSA

With good reason, Defendants contend that Arslani's DTSA claims are barred by the statute of limitations.

#### *i. Statute of Limitations*

The DTSA provides for a three-year statute of limitations, beginning when the plaintiff discovers or by the exercise of reasonable diligence should have discovered the alleged misappropriation. 18 U.S.C. § 1836(d). So, the clock begins to run when Arslani knew or should have known that his alleged trade secrets were wrongfully acquired, disclosed, or used. *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 645 (2010); 18 U.S.C. § 1839(5).

---

parties—and their attorneys—can do something doesn't mean they should do something. *Hernandez v. Williams*, No. 23-cv-50267, 2025 U.S. Dist. LEXIS 44789, at *5 n.1 (N.D. Ill. Mar. 12, 2025). Adding allegations for the first time in a response brief is poor practice. *Id.* (Indeed, it bugs the heck out of Judge Kness and me.) But the Court doesn't find Arslani engaged in poor practice in this case because (1) he's a self-represented litigant, who may not know any better, and (2) importantly, Defendants raised an affirmative defense in a Rule 12(b)(6) motion to dismiss, so it's entirely understandable that the non-moving party would lard its response brief with allegations to address the affirmative defense.

[4] Although Count VI for declaratory relief derives from 28 U.S.C. § 2201, the Declaratory Judgment Act standing alone does not provide a basis for federal jurisdiction. *Ream v. Handley*, 359 F.2d 728, 732 (7th Cir. 1966).

To trigger the statute of limitations, a plaintiff does not need to realize that his injury is actionable in court—it is enough that the plaintiff is aware of the existence of the injury. *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). Further, under the DTSA, "a continuing misappropriation constitutes a single claim of misappropriation," 18 U.S.C. § 1836(d), so each subsequent or continued use of a misappropriated trade secret does not restart the clock.

In this case, Defendants contend that Arslani's own allegations establish his DTSA claims as untimely. They point out that Arslani alleges that he wrote to Nuance's Chief Legal Officer on September 8, 2021, detailing, "[t]he potential misappropriation of Plaintiff's methodologies, including the Health Check and RIE frameworks, which had been shared with Nuance executives Michael Clark and Brad Morrison." Dkt. 1 at ¶ 51. Moreover, Arslani's complaint alleges, "In late August 2021 . . . Plaintiff directly confronted Defendant [*sic*] Conant regarding the misappropriation and ongoing use of CAIS's intellectual property by Nuance and DeliverHealth. Conant did not deny the accusation but instead stated that Nuance and Brad Morrison had 'screwed us over.'" *Id.* at ¶ 166.

Under Defendants' theory, Arslani's September 2021 letter and his confrontation with Dr. Conant in 2021 confirm that Arslani was aware of the alleged misappropriation by Nuance and DeliverHealth more than three years before he filed this action in 2026, so this action is time-barred. Arslani, on the

other hand, argues that his letter was based on a mere "suspicion" of wrongdoing and did not start the limitations clock.

But the allegations in the Complaint indicate that by late 2021, Arslani was at least on inquiry notice of the fact that his methodologies were being used by Nuance and DeliverHealth. By admitting that he "directly confronted" Dr. Conant in 2021 regarding Nuance and DeliverHealth's use of his methodologies and that Dr. Conant "did not deny the accusation," Arslani admits that he knew about the injuries on which his DTSA claims rest more than three years before he filed this action. Dkt. 1 at ¶ 166. Even reading these allegations in the light most favorable to Arslani, the Complaint affirmatively establishes that, by late 2021, Arslani "ha[d] reason to know of the injury giving rise to the cause of action." *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). Indeed, accrual begins "on the discovery of the harm itself, not the discovery of the elements that make up a claim." *Cancer Found.*, 559 F.3d at 674; *see Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386 (7th Cir. 2010) (rejecting the argument that "a limitations period does not begin to run until the precomplaint investigation is complete"). For this reason, Arslani can't avoid his admissions by suggesting that he didn't discover "the full scope of the misappropriation" until after 2021. Dkt. 1 at ¶ 57.

In short, as currently alleged and briefed, Arslani's DTSA claims began to accrue in late 2021—more than three years before he filed the Complaint in March 2026. Arslani's DTSA claims appear to be barred by the statute of limitations, unless the period is tolled by an equitable doctrine.

### *ii. Tolling*

Arslani argues that, even if his DTSA claims accrued more than three years before he filed this action, the limitations period was tolled by Defendants' fraudulent concealment. Fraudulent concealment, also known as "equitable estoppel," tolls the statute of limitations when a defendant conceals vital information about the existence of the plaintiff's claim or otherwise makes representations to the plaintiff that cause him to delay bringing his claims. *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 506 (7th Cir. 1999). The traditional elements of equitable estoppel are: "(1) misrepresentation *by the party against whom estoppel is asserted*; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000) (emphasis added). The basis for equitable estoppel can be "[a]ny deliberate or otherwise blameworthy conduct by the defendant that causes the plaintiff to miss the statutory deadline." *Shropshear v. Corp. Couns. of City of Chicago*, 275 F.3d 593, 597 (7th Cir. 2001).

Arslani specifically contends that the limitations period was tolled by "[s]even independent acts of fraudulent concealment" that "establish a continuous pattern of concealment from 2020 through 2026." Dkt. 31-1 at 12–13. But only two of these seven acts were taken by Defendants, "the part[ies] against whom estoppel is asserted." *LaBonte*, 233 F.3d at 1053. Consequently, only two of these seven acts could reasonably serve as the basis for Arslani's equitable estoppel argument. These two acts are "Nuance's silence after [its Chief Legal Officer] promised to

investigate" and "Microsoft's own Business Conduct Office receiving and ignoring a February 2025 complaint." Dkt. 31-1 at 12. But silence is not the kind of obstructive conduct that warrants estopping a defendant from invoking the statute of limitations. *Flight Attendants Against UAL Offset v. Comm'r of Internal Revenue*, 165 F.3d 572, 577 (7th Cir. 1999) ("Not being prompt and helpful is a lot different from actually preventing a plaintiff from suing in time."). So, neither of these acts tolled the limitations period.

Although none of the five remaining "acts of fraudulent concealment" were taken by Defendants, Arslani asserts that he signed an agreement with CAIS that prohibited him from contacting Nuance or Microsoft "in any way related to his employment and separation with CAIS." Dkt. 31-1 at 11–12. He contends that this agreement "foreclosed" any "duty to investigate" his injuries under the DTSA, and thus the agreement tolled the limitations period. *Id*. at 11. Setting aside his failure to allege at this time any acts by Defendants in connection with this agreement, Arslani fails to explain now why this agreement prevented him from discovering any information essential to file suit within the statute of limitations. What's more, he offers no explanation for why the agreement purportedly prevented him from suing within the limitations period when it didn't prevent him from filing suit in state court while the agreement was still in effect in September 2025. *See* dkt. 1 at ¶ 60.

Simply put, currently, Arslani fails to show how any acts by Defendants excuse his delay in filing. Perhaps with the benefit of discovery and the proper

procedural vehicle for addressing the statute of limitations defense, Arslani might be able to do so, consistent with Rule 11. But what's before the Court now isn't enough.

Arslani also attempts to invoke the related doctrine of equitable tolling. This doctrine "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). The plaintiff bears the burden of demonstrating that he "diligently pursued" his claim and that "some extraordinary circumstances" prevented him from timely filing his complaint. *Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016). Equitable tolling is an extraordinary remedy that is "rarely granted." *Carpenter v. Douma*, 840 F.3d 867, 873 (7th Cir. 2016).

In determining whether to apply equitable tolling, courts look at "the entire hand" that the plaintiff was dealt and use a "flexible standard that encompasses all of the circumstances that he faced and the cumulative effect of those circumstances" to determine whether they were "extraordinary" and truly prevented timely filing. *Id.* at 872 (cleaned up). But "if a reasonable person in the plaintiff's position would have been aware within the limitations period of the possibility that [his] rights have been violated, then equity does not toll the limitations period." *Chapple*, 178 F.3d at 506. The inquiry "asks only whether the plaintiff was unable to learn of the possibility of its claim within the limitations period; it does not ask whether the plaintiff was unable to obtain solid proof." *Id.* When a court denies equitable tolling

at the pleading stage, "it is making a judgment that the complaint fails to state a claim for relief because it is indisputably time-barred." *Watkins v. Mohan*, 144 F.4th 926, 940 (7th Cir. 2025) (internal quotation marks and citation omitted).

Equitable tolling doesn't currently help Arslani. As previously mentioned, Arslani knew enough about his claims in late 2021 to confront Nuance executives on two separate occasions regarding the company's use of his methodologies. Dkt. 1 at ¶¶ 51, 166. And Arslani currently fails to point to any extraordinary circumstances that justify his delay in bringing this action, despite knowing about his injury. Instead, Arslani points to "six specific concealed facts" that he was not aware of in 2021. Dkt. 31-1 at 10–11. But his knowledge that another company was using his alleged trade secrets gave him enough information to recognize that his rights may have been violated. Additionally, as represented, none of the "seven independent acts of fraudulent concealment" are so extraordinary as to excuse Arslani's untimely filing, especially given that he had reason to know about his injury during the limitations period.

Thus, based on the Complaint and briefing currently before the Court, neither equitable estoppel nor equitable tolling extends the limitations period in this case.

Arslani also attempts to invoke *Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424 (1965) to argue that his DTSA claims were tolled during the pendency of his state court action, which ran from September 30, 2025 through November 6, 2025. Dkt. 31-1 at 14–15. This argument is misguided. To be sure, federal statutes of

limitations are tolled during the pendency of a *timely filed* state court action. *See Burnett*, 380 U.S. at 426. But no amount of tolling can revive an already stale claim. As discussed above, Arslani's DTSA claims began to accrue in late 2021—more than three years before he filed the Seventeenth Judicial Circuit Court action in September 2025. Accordingly, *Burnett* cannot revive Arslani's DTSA claims because his state court action itself was untimely.

Finally, in his Complaint, Arslani alleges that the Illinois savings statute, 735 Ill. Comp. Stat. 5/13-217, entitles him one year to refile following his voluntary dismissal of the Seventeenth Judicial Circuit Court action. But Arslani abandons this argument as to Count I in his response brief, conceding that his DTSA claims are governed by the federal limitations period. Dkt. 31-1 at 14; *see Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

In short, none of the tolling doctrines that Arslani attempts to invoke can extend the limitations period in this case. As alleged (including allegations contained in the response brief), Count I is therefore barred by the DTSA's statute of limitations.

**b. Leave to Amend**

In his response brief, Arslani sought leave to file an amended complaint. He didn't file a motion under Rule 15 and attach the proposed pleading. No doubt, that procedure is best practice and one that courts can rightfully require. *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361–62 (11th Cir. 2006); *Dynasty*

*Int'l LLC v. Lexington Ins. Co.*, Case No. 2:15-CV-374 JD, 2016 U.S. Dist. LEXIS 78443, at *15 (N.D. Ind. June 16, 2016) ("A motion to amend a complaint, however, must be filed separately, rather than incorporated into a response to a motion to dismiss."); *see also* Fed. R. Civ. P. 7(b). But courts have discretion in requiring compliance with this best practice. *In re Allergan ERISA Litig.*, 975 F.3d 348, 358 n.16 (3d Cir. 2020); *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2nd Cir. 1992). The Court exercises its discretion to excuse Arslani from filing a Rule 15 motion with an attached proposed pleading, particularly because he is a self-represented litigant. *See, e.g.*, *Harris v. Meves*, No. 18-CV-1176, 2020 U.S. Dist. LEXIS 20842, at *3 n.1 (E.D. Wis. Feb. 6, 2020); *Cherry v. Wash. County Seriff's Dep't.*, No. 11-C-1021, 2012 U.S. Dist. LEXIS 10268, at *2 (E.D. Wis. Jan. 30, 2012). But excusing this requirement doesn't end the analysis.

A thorough and thoughtful analysis must consider the procedure and context of Defendants' motions. Remember that Defendants filed motions to dismiss under Rule 12(b)(6), seeking dismissal based on the affirmative defense of the statute of limitations. That's a problem—a big problem—for at least two reasons.

First, as this Court has previously noted, district courts are on thin ice when they grant Rule 12(b)(6) motions to dismiss based on any affirmative defense, including statute of limitations. *Betts v. Wigget*, 756 F. Supp. 3d 551, 557 (N.D. Ill. 2024). Indeed, the Seventh Circuit has characterized these types of dismissals as "irregular" and an "unusual step." *Cancer Found*, 559 F.3d at 674; *United States v. Northen Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004). For years, the Seventh Circuit

has warned district courts to be wary of engaging in this practice. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) ("We have held many times that, because complaints need not anticipate defenses, Rule 12(b)(6) is not designed for motions under Rule 8(c)(1)."); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 n.1 (7th Cir. 2012) ("[W]e have repeatedly cautioned" not to use Rule 12(b)(6) to dismiss actions based on the statute of limitations.). Indeed, the Seventh Circuit has recently reiterated that warning. *See Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022).

Rather than moving to dismiss under Rule 12(b)(6) based on a statute of limitations defense, the movant should answer and file a Rule 12(c) motion or, alternatively, move for summary judgment. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020); *Richards*, 696 F.3d at 638; *Brownmark Films*, 682 F.3d at 690. To be blunt, affirmative defenses don't justify dismissal under Rule 12(b)(6). *Doe v. GTE Corp.*¸ 347 F.3d 655, 657 (7th Cir. 2003).

Besides the textual basis, good reasons exist why generally Rule 12(b)(6) shouldn't be used to dismiss an action based on the statute of limitations. For example, plaintiffs aren't required to anticipate and negate affirmative defenses in their complaints. *Perry v. Merit Sys. Prot. Bd.*, 582 U.S. 420, 435 (2017); Fed. R. Civ. P. 8(c)(1). Additionally, using Rule 12(b)(6) instead of Rule 12(c) or Rule 56 might deprive the non-moving party of proper notice that would enable it to dispute the crucial issues of the case on equal terms. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020). What's more, recognizing and adhering to the distinctions of the proper

procedure is necessary to correctly allocate the burdens of pleadings and proof. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

No doubt, there are exceptions to this general rule, such as when plaintiffs plead themselves out of court by including allegations leaving no doubt that the claim is barred. *See Brook*, 578 F.3d at 579; *Slaney v. Int'l Amateur Athletic Fed.*, 244 F.3d 580, 597 (7th Cir. 2001) (court need not ignore allegations in complaint that undermine the plaintiff's claim). But "[r]arely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper." *Luna Vanegas*, 46 F.4th at 640. "[I]t is safer to insist on compliance with the rules." *Id.*

The exception exists only in the unusual circumstance that the complaint "*plainly reveals* that an action is untimely." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008) (emphasis added); *see also Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)."). Indeed, this Court has gone out on that limb, finding the existence of the exception. *See, e.g.*, *Thompson v. Roser*, No. 3:22-CV-50049, 2024 U.S. Dist. LEXIS 89246, at *1 n.1 (N.D. Ill. May 17, 2024). But when it does so, the Court likely allows the plaintiff leave to amend. *See, e.g.*, *LaMonica Fam. Ltd. P'ship, LLC v. W. Bend Mut. Ins. Co.*, No. 3:23-cv-50258, 2024 U.S. Dist. LEXIS 59396, at *10 (N.D. Ill. Apr. 1, 2024).

Second, Rule 15(a)(2) instructs district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, after granting a motion to dismiss, a court should grant leave to amend, unless doing so would be futile or unwarranted. *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 347 (7th Cir. 2018). "The law is clear that a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). "But those instances are the clear exception; the norm remains affording a plaintiff at least one opportunity to amend his complaint." *Id.* "As a best practice, only after receiving full briefing on the issue should a district court deny a party's motion to supplement a complaint based on futility." *Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 979 (7th Cir. 2025).

The twin barrels of the narrowness of the exception allowing a Rule 12(b)(6) motion to raise the statute of limitations defense and liberal amendments counsel that, despite granting the motion, this Court do so without prejudice, giving Arslani leave to file an amended complaint. In addition to these general legal principles, the circumstances of this case further support leave to amend. Amendment is consistent with the rationales limiting the use of Rule 12(b)(6) when raising an affirmative defense and allowing a party leave to amend its pleading. This procedure will allow Arslani to factually develop a response to the affirmative defense and will ensure that Defendants bear the appropriate burden in support of the defense. This procedure will also allow Arslani the opportunity to fully present facts relating to his tolling arguments, on which he bears the burden of proof. For

example, remember that the Court is required to look at the "entire hand" Arslani was dealt to determine if equitable tolling applies. *Carpenter*, 840 F.3d at 872. What's more, this procedure ensures that the process envisioned by the Federal Rules of Civil Procedure is not improperly evaded.

## IV. Conclusion

For these reasons, Defendants' 12(b)(6) motions to dismiss [19, 20] are granted. Arslani's request for leave to file an amended complaint [31-1] is granted. The amended complaint must be filed by November 10, 2026. Because the statute of limitations issue is likely dispositive, after Arslani files the amended complaint, the Court will allow the parties to engage in limited discovery, focused solely on facts related to the statute of limitations issue, including the alleged tolling doctrines. The parties are given until February 11, 2026, to complete this limited discovery, which Magistrate Judge Iasparro will oversee, including whether any discovery seeks information beyond the scope of this order. During discovery, the Court stays Defendants need to answer the amended complaint. Following discovery, per its standing order, the Court will hold a summary judgment pre-filing conference on February 23, 2027, at 10:00 a.m.

Entered: October 9, 2026

By: ______________________
Iain D. Johnston
U.S. District Judge